ELIJAH JOHNSON, APPELLANT, VS. THE COUNTY OF WAKULLA, APPELLEE.

COUNTY COMMISSIONERS—Records, evidence, change of venue, limitations.

1. A county warrant drawn by the County Commissioners on its Treasurer, and attested with the seal of the county, is a speciality under seal, and is not barred by the statute of limitations until the lapse of twenty years after its maturity.

2. Section 14, p. 318, McClellan's Digest, (Sec. 3, Chapter 2086. Laws of 1877), that provides: "Every claim against any county in this State shall be presented to the Board of County Commissioners within one year from the time said claim shall become due, and shall be barred if not so presented," does not apply to orders or warrants drawn by the Commissioners upon the county treasury ; the existence of such orders or warrants being evidence *per se*, that the claims for which they were given in payment, have been duly presented to and audited and adjusted by such board. This statute applies only to such claims against the county as are in their incipient state, that have never been presented, audited or allowed.

3. A petition for change of venue in a civil suit is properly refused when it is supported only by the affidavit of the party making the application, when such affidavit is unsupported by any other facts or circumstances showing a necessity for such change ; and when the applicant's affidavit itself gives no facts or circumstances showing such necessity except the bare assertion in the language of the statute that "the defendant has an undue influence over the minds of the inhabitants of said county.." Greeno vs. Wilson, 27 Fla., 492, 8 South. Rep., 723, cited and approved.

4. The very nature and importance of the duties, *quisi* judicial and *quisi* legislative, that devolve by law upon Boards of County Commissioners, renders it entirely indispensable that they, by

their clerk, should keep an accurate record of the proceedings of their every session, even if such record were not expressly required by law to be kept. Section 3 of Chapter 11, Laws of 1845, requiring such records to be kept, held to be still in force.

5. Where such record has been kept, and is produced from the proper custody, the Clerk of the Circuit Court, and is identified by the proper authority, it is admissible as evidence in any cause to which it may be pertinent.

6. Such records, by the provisions of Chapter 863, Laws of 1859, (Sec. 9, p. 317 McClellan's Digest), are stamped with all the characteristics of public records, to which the public shall at all times have full access.

Appeal from the Circuit Court for Wakulla county.

The facts of the case are stated in the opinion of the court.

*R. W. Williams* for Appellant.

*John W. Malone* for Appellee.

TAYLOR, J. :

On the 13th day of July, 1887, Elijah Johnson, the appellant, instituted his suit in assumpsit in the Circuit Court of Wakulla county against the county of Wakulla upon the following warrant or order on the county treasury :

"COMMISSIONERS COURT,

"21st day of March, 1868.

"Order No. 4.     $500.

46

"It is hereby ordered that the county treasury pay to John S. Moring, or bearer, five hundred dollars, to become due on the (1) first day of January, eighteen hundred and seventy-two, out of any money in the county treasury not otherwise appropriated, with interest from date.    Given under my hand and seal of the court the 21st day of March, A. D. 1868.

"H. L. HENDERSON,

(Seal.)        President Board County Commissioners

Wakulla County.

"The declaration alleging transfer of said warrant by the payee to plaintiff.   To the first set of pleas filed by the defendant the court sustained a demurrer interposed by the plaintiff that it is unnecessary to notice further.   The defendant county then interposed the following pleas :   1st.  "And now comes the defendant, and for plea to the first, second and third counts in plaintiff's declaration says :   That heretofore, on the fifth day of January, A. D. 1874, T. W. Brevard as the attorney at law for the owner and bearer of the order or warrant numbered (4) mentioned and set forth in said declaration, and with his consent delivered said order or warrant up to defendant in exchange for other orders or warrants of the same amount which were issued by defendant in small sums or amounts, but aggregating the amount of said order or warrant number 4, and delivered them to the said attorney, and thereby took up and satisfied and cancelled said order or war-

rant number 4, and afterwards this defendant paid and satisfied the said orders or warrants which were issued by it as aforesaid, and delivered as aforesaid, in exchange and satisfaction of the said order or warrant number 4."

2nd. "And this defendant, for a second plea to the courts aforesaid says : That the causes of action therein mentioned did not accrue within five years next before the commencement of this action."

3rd. "And for a third plea defendant says : That the cause of action mentioned in the common courts in said declaration did not accrue within five years next before the commencement of this suit."

4th. "And for a fourth plea defendant says: That the several causes of action mentioned in said declaration were not presented to the County Commissioners of Wakulla County, or to the Clerk of said Commissioners within one year from the time the same become due."

5th. "And for a fifth plea defendant says : That it never was indebted in manner and form as alleged in the common courts in said declaration."

Issue was joined on the first and fifth of these pleas. To the 2nd, 3rd and 4th pleas the plaintiff demurred. The court sustained the demurrer to the second and fourth pleas, overruling it as to the 3rd ; and the order overruling it as to the 3rd plea is assigned as error.

We think the ruling of the court upon this demurrer was proper throughout. The instrument sued upon being a specialty under seal was not subject to the bar of the statute of limitations until the lapse of twenty years after its maturity, so that the bar of five years set up in the second plea was inapplicable and was properly overruled upon demurrer. Lewis & Sons vs. Jefferson County, 20 Fla., 980. In the declaration there are common counts alleging that the defendant on the 21st of March, A. D. 1863, was indebted to plaintiff in the sum of $500, for work done and materials furnished, etc. To these common counts the defendant interposed its 3rd plea setting up the non-accrual of the causes of action set up therein within five years before the commencement of the suit, etc. We are satisfied that this plea was properly applicable to said common counts and was a complete legal defense thereto, and that the demurrer thereto was properly overruled. The fourth plea was framed to set up as a special defense the provision of sec. 3, Chapter 2086, Laws of 1877, (sec. 14, p. 318 McClellan's Digest), that is as follows: "Every claim against any county in this State shall be presented to the Board of County Commissioners within one year from the time said claim shall become due, and shall be barred if not so presented."

The existence of an order or warrant by a Board of County Commissioners such as is sued upon herein is evidence *per se* that the claim for the payment of

which it was given, has been duly presented to and audited and adjusted by the board, such adjustment thereof culminating in the order on the county's treasury for the amount found to be due. We do not think that this statute contemplates that county orders or warrants on its treasury, the bare existence of which conclusively shows prior presentation to and adjustment by the board of the claims upon which they are based, should be presented year after year, *toties quoties*, to the Board of Commissioners, but we think the statute contemplates only such claims against the county as are in their incipient state, that have never been presented, audited or allowed. See the dissenting opinion of Smith, C. J., in Royster vs. Commissioners, 98 N. C., 153, upon a statute similar to, but much more comprehensive than ours. We think the court correctly sustained the demurrer to this fourth plea. This disposes of the questions presented upon the pleadings. At the fall term, 1887, of the Circuit Court for Wakulla county, at which the case was tried, and before the trial thereof, the plaintiff presented his petition to the court praying a change of venue to another county, upon the ground that he feared he could not secure a fair trial in Wakulla county, because the inhabitants of said county feel such an interest in, and desire to defeat his claim; and because the defendant county has an undue influence over the minds of the inhabitants of said county.

The court below denied the application, and this ruling is assiged as error. The petition and affidavit are very meagre ; the affidavit of the plaintiff in support of his petition for removal being wholly unsupported by any other proofs, and of itself giving no facts or circumstances showing the necessity for such removal, except the bare assertion in the language of the statute that "the defendant has an undue influence over the minds of the inhabitants of said county." The ruling of this court in the case of Greeno vs. Wilson, 27 Fla., 492, 8 South. Rep., 723, decided at the January term, last, fully disposes of this assignment in favor of the correctness of the ruling of the court below denying the application. The fact that the county where the suit was pending was a party defendant did not disqualify the jurors of the county to sit in the trial of the cause as is provided in Chapter 1817, Laws of 1870.

Upon the issue as presented by the defendant's first plea, which, in substance, was a plea of payment, the cause was tried before a jury and resulted in a verdict and judgment for the defendant county. Motion for a new trial was made and denied, and the plaintiff below appeals to this court. We have disposed of all the questions assigned as error, and urged in the motion for new trial as grounds therefor, except the 2nd, 3rd and 4th grounds of the motion for new trial that are as follows: "2nd. The court erred in admitting

and allowing to be read the portion of the book offered by the defendant, on the part of defendant, against the objection of plaintiff."

"3rd. The verdict is not supported by the evidence."

"4th. The verdict is against the evidence and contrary to law."

The consideration of these assignments necessitates some discussion of the evidence. The plaintiff, after putting in evidence the order or warrant hereinbefore copied, was sworn as a witness on his own be-, half, and testified that he was the owner of the warrant or order sued upon; that it was transferred to him by one John S. Moring, the payee therein named immediately after it was issued; that no part of it has ever been paid to him, and that the whole thereof is now due to him; that he had three (3) orders or warrants of defendant for $500 each, due the first of January, 1870, 1871 and 1872, respectively; that the first two, those due in 1870 and 1871, were placed with T. W. Brevard, Jr., an attorney at law, for collection or suit; that Brevard gave a receipt for the said two orders or warrants, which receipt being produced was as follows: "Received of Green Johnson, for collection or suit, two orders upon the treasury of Wakulla county, dated March 21, 1868, said orders due respectively on the the first of January, 1870, and first of January, 1871, each order for the sum of five hundred dollars, drawn by H. L. Henderson, President of the

Board of County Commissioners of said county of Wakulla, and sealed with the seal of the Court of Probate of said county.'' That Brevard effected a settlement with the defendant of said two warrants, due in 1870 and 1871 by taking script in small denominations for the two warrants of $500 each with the interest thereon; that at the time this settlement was effected of those two warrants, the warrant due in 1872, and now in suit, was in his possession; that sometime after the said settlement he gave the warrant now in suit to T. F. Moore and requested him to hand it to Col. Brevard for suit or collection; that he is positive and certain that this warrant was given to Col. Brevard sometime after the settlement of the first two warrants; that no collection of this warrant was ever effected, in his knowledge; and no part of the same has ever been paid, but the whole amount of the same is now due to him. Thomas F. Moore, as a witness for plaintiff, corroborated the statements of the plaintiff, and testified further, that after the settlement by Brevard of the two warrants due in 1870 and 1871, Elijah Johnson sent the warrant now in suit, due in 1872, to T. W. Brevard, at Tallahassee, by him for collection; that he took it to Brevard and took Brevard's receipt therefor; that in his presence Col. Brevard copied the warrant and wrote his receipt therefor, which he (witness) delivered to Mr. Johnson and which is on file in this case. He did not recollect the date or year he took the warrant in suit to Col. Brevard. This constitutes the substance of the plaintiff's evidence. The defendant

county then produced as its witness one George R. Smith, who testified that he was Clerk of Wakulla county, and Clerk for the County Commissioners of Wakulla county, and custodian of the records of said county. He then produced in evidence a book and testified that it was the record book of the said County Commissioners. The defendant then introduced the book and read the following inscription therefrom:

"MONDAY, January 5th, 1874.

"The court adjourned over from last Saturday until to-day.

"Hon. J. E. Clements, President *pro tem.*, in the chair; proceeded to business, a quorum being present, to-wit: Clements, Pool, Hargrett and Gavin. T. W. Brevard, Jr., attorney for Elijah Johnson, presented, by A. Hopkins, two orders or instruments of writing numbered three and 'FOUR,' eminating from the Commissioners' Court March 21, 1868, and passed by the county to John S. Mooring, for county indebtedness to him, and by him passed to Elijah Johnson; said orders being payable to said Mooring or bearer, and made for $500 each, and payable respectively the first days of January, A. D. 1871 and 1872, with interest from date. In the matter of the said claim of the said Johnson, it is agreed that the Commissioners provide for the foregoing orders by granting to said Theodore Brevard, Jr., attorney for Elijah Johnson, an exchange of smaller non-paying-interest script for said indebtedness, amounting to one thousand four hundred and sixty-five dollars, being the amount, principal and in-

terest, of said orders ; that said script be on the same
footing as other script of the county, paying no inter-
est ; and to be paid out of any funds the county may
have, as other script now issued, not otherwise appro-
priated, said script being made in from five to fifty dol-
lar order on the treasury until said amount above be
made out, and numbered from No. 1 onward, and made
in favor of T. W. Brevard, Jr., attorney for Elijah John-
son, or order ; all of which is in accordance with the
petition of the said plaintiff, T. W. Brevard, attorney,
&c.　On motion, the foregoing settlement was ordered
and passed by the board, and the proper officer di-
rected to issue said script in accordance therewith, and
make the exchange. The board adjourned till to-
morrow morning, 9 o'clock.

　　　　　　　　　"JAMES M. SMITH, SR.,

　　　　　　　　　　　　　"Clerk."

The witness, George R. Smith, read the same, and
then testified that the warrants that were exchanged
were afterwards paid by the county of Wakulla.　The
defendant then introduced one Dick Hargrett, who tes-
tified that he was a County Commissioner for Wakulla
county in 1873 and 1874, and that during the time that
he was such Commissioner two large warrants were ex-
changed for smaller ones with the County Commission-
ers for Wakulla county ; he thinks the two large war-
rants were for $500 each ; the exchange was made with
Mr. Hopkins for Col. T. W. Brevard.　The warrants
for smaller amounts were issued and turned over to
Col. T. W. Brevard.　Isaac Gavin testified to the same

facts as did Dick Hargrett. N. R. Walker for the defense testified that the warrants that were issued to Col. T. W. Brevard in exchange for other warrants, and known as the Brevard script, had been paid by Wakulla county. It is urged that the court erred in admitting in evidence the record book of the County Commissioners, or that part thereof appertaining-to the subject-matter of this suit. This objection is not tenable, and is fully discussed and decided to all intents and purposes in the analagous case of Bell and Lockett vs. Kendrick, 25 Fla., 778, 6 South. Rep., 868, where it is said : " Official registers or books kept by persons in public office in which they are required, whether by statute or by the nature of the office, to write down particular transactions occurring in the course of their public duties and under their personal observation, are generally admissible in evidence, notwithstanding their authenticity is not confirmed by the ordinary test of truth, the obligation of an oath, and an opportunity to cross-examine the person on whose authority the truth of the document depends. It is not necessary to the admissibility in evidence of an official register of this kind that a statute should expressly require it to be kept, or that the nature of the office should render it indispensable." We think that the official records of the proceedings of a Board of County Commissioners presents a much stronger claim for admissibility as evidence in any cause to which they may be pertinent, than the record held, in the case last cited, to be competent evidence. Boards of County Commissioners

under our system of State government are a very important auxiliary or branch of the government of the State within the limits of their respective counties. They are expressly provided for in our Constitution, and are clothed by law with numerous important powers and duties *quasi* judicial and *quasi* legislative. They have entire supervision of the financial affairs of their county; and the adjustment of all money demands upon her; and the assessment and levy of all her taxes. They provide for the care of her poor and indigent. They provide and care for her public buildings, roads and bridges; supervise the proper registration of her electors; and canvass, declare and certify her public elections, besides numerous other duties devolving upon them by law. They are public officers in the broadest sense of the term; and even if they were not expressly required by law to keep a record of their official acts and proceedings, we are decidely of the opinion that the very nature and importance of their official duties renders it entirely indispensable that they should keep such record and with accuracy. But we are inclined to the opinion that there is still in force a statutory provision expressly requiring such record to be kept. Section 3 of Chapter 11, Laws of 1845, entitled "An act to organize a Board of County Commissioners in the several counties of this State," provides as follows: "That the Judge of Probate in each county shall be *ex-officio* a member and the President of said Board, and shall keep or cause to be kept a regular record of its proceedings at each session there-

of." Though by subsequent changes in our Constitution and laws the Judge of Probate, *eo nomine*, has been replaced by the title "County Judge," and is no longer *ex-officio* a member of or President of said Board ; we know of no constitutional or statutory provision that, in express terms or by implication, repeals that feature of this provision of law requiring a regular record to be kept of the proceedings of said boards. But, however this may be, we think that the manifest intention of the Constitutions of 1868 and 1885, in making the Clerks of the Circuit Courts in the several counties also Clerks of the Boards of County Commissioners thereof was, that they, as official recorders and custodians of the records generally of the county, should write up and keep the records of the proceedings of such boards. The Clerk of the Court, under these changes of law, becoming the successor to the Judge of Probate as *ex-officio* member and President of the Board in so far as, under the act of 1845, it was such Judge of Probate's duty to keep or cause to be kept such record. Canova vs. Commissioners, 18 Fla., 512. Indeed it has all along, in the various stages of legislation upon this subject, been fully contemplated that such records should be kept. By the provisions of Chapter 863, Laws of 1859, (Sec. 9, p. 317, McClellan's Digest,) it is made the duty of such Commissioners "to keep their books open for inspection," whereby such records are not only recognized, but stamped with all the characteristics of public records, to which the public should at all times have full access. It follows from what has

been said that the court below committed no error in admitting in evidence the record of the proceedings of the County Commissioners after the book in which they were kept had been duly identified by its legal custodian, the Clerk of the Circuit Court. That part of this record that was pertinent to the issues herein is unusually clear, explicit and full, and not only identified the cause of action sued upon by its distinguishing number, "four," and by the date when it fell due, (January 1, 1872,) but showed that in its place and stead, and upon the application of the plaintiff, new warrants or orders of smaller amounts aggregating the full sum of the claim, principal and interest, had been made and delivered to the plaintiff; and it was shown by several witnesses that these substituted smaller warrants were subsequently paid. If this be true, it certainly constitutes payment of the demand sued for. The issue thus presented to the jury involved a simple question of fact; the evidence upon the one side conflicting with that upon the other. It was the sole and exclusive province of the jury to determine on which side the truth lay. They have done so on the side of the defendant county. We see nothing in the record that would warrant us in disturbing that finding.

The judgment of the court below is affirmed.