FIRE PROTECTION DISTRICTS — CONSTITUTIONALITY — BOND ISSUE Title 19 O.S. 901.1 [19-901.1] — 19 O.S. 901.26 [19-901.26] (1971) creating the authority for the establishment of fire protection districts is constitutional and such district may vote a bond issue and pay for the bonds by annual special assessments against the land specially benefitted. Fire protection districts are necessarily confined to the boundaries of the county in which they are established. However, organized districts may enter into agreements pursuant to the Inter-Local Cooperation Act (74 O.S. 1001 [74-1001] — 74 O.S. 1008 [74-1008] (1971)). The Attorney General is in receipt of your recent letter wherein, in effect, you ask the following questions: "(1) Is Title 19 O.S. 901.1 [19-901.1] (1971) et seq. `Fire Protection Districts', constitutional? "(2) Can the entity formed pursuant to the above cited legislation vote a bond issue and pay for such issue? "(3) Can the entity authorized pursuant to the above cited legislation be formed in more than one (1) county or could it be formed coterminous with the boundaries of the Northeast Counties of Oklahoma Economic Development District (NECO) ? "(4) Can organized fire protection districts enter into agreements pursuant to the Inter-Local Cooperation Act?" Title 19 O.S. 901.1 [19-901.1] — 19 O.S. 901.26 [19-901.26] (1971) embodies a statutory grant of authority for the creation and operation of fire protection districts outside of the corporate limits of cities and towns. Section 901.15 allows the board of directors of the fire protection district to call for bond elections to finance purchases and construction work for the operation of the district fire company or department. Presumably, your first question relates to the validity of 19 O.S. 901.18 [19-901.18] (1971), which states: "Such bonds and the interest thereon shall be paid by revenue derived from an annual assessment upon the real property of the district, and all the real property of the district shall be and remain liable to be assessed for such payments as herein provided." Title 19 O.S. 901.19 [19-901.19] (1971) states in part: "All assessments levied under the authority of this act shall be a lien against the tract of land on which they have been levied, until paid, and such lien shall be co-equal with the lien of ad valorem and other taxes, including special assessments, and prior and subsequent to all other liens." It therefore appears that your question of constitutionality of the act is determinative upon whether the assessment or real property to pay for the bonds is construed to be a tax or a special assessment. The Attorney General on August 3, 1962, in an opinion to the Honorable John M. Rogers held that the annual assessments required to be made in fire protection districts to raise sufficient money to care for the cost of operation of the district were to be considered special assessments and not ad valorem taxes. The opinion went on to state that the act should be held to be constitutional unless and until same has been declared to be unconstitutional by a decree and judgment of a court of competent jurisdiction. We hereby affirm the holding of that opinion and enclose a copy for your consideration. In response to your third question, we would refer you to 19 O.S. 901.1 [19-901.1] (1971) which allows a petition for the formation of a fire protection district to be submitted to the Board of County Commissioners of the county in which such area sought to be formed as a district is located. Section 19 O.S. 901.2 [19-901.2] requires the County Commissioners to direct the county clerk to give notice of hearings regarding the formation of a district by publication in a newspaper of general circulation in the county in which such proposed district is located. Section 19 O.S. 901.22 [19-901.22] is concerned with the procedure for allowing additional territory to be included in the fire protection district. This section provides that territory contiguous to any district and in the same county may be included in the limits of the district. It thus appears clear that the intent of the statutes creating the authority for the establishment of fire protection districts requires that the district must be organized within the boundaries of the county in which they were created. Your last question is concerned with whether fire protection districts organized in accordance with 19 O.S. 901.1 [19-901.1] (1971) to 19 O.S. 901.26 [19-901.26] may enter into agreements pursuant to the Inter-Local Cooperation Act found at 74 O.S. 1001 [74-1001] — 74 O.S. 1008 [74-1008] (1971). Section 1001 of the Inter-Local Cooperation Act states the purpose for which the statutes were enacted: "It is the purpose of this act to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on the basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best the geographic, economic, population and other factors influencing the needs and development of local communities." Section 74 O.S. 1003 [74-1003] defines the meaning of the term "public agency". "For the purposes of this act, the term 'public agency' shall mean any political subdivision of this state; any agency of state government or of the United States; and any political subdivision of another state . . ." To determine whether existing fire protection districts may enter into agreements pursuant to the Inter-Local Cooperation Act, it must be established that fire protection districts fall within the definition of "public agency" as defined in 74 O.S. 1003 [74-1003] (1971). In the case of Armstrong et ux v. Sewer Improvement District No. 1, Tulsa County, 201 Okl. 531, 199 P.2d 1012, 207 P.2d 917, the Court construed the status of a sewer improvement district and stated: "A careful study of the act convinces us that the district is not such a political subdivision . . . "But a reading of the act herein involved clearly discloses that the sewer improvement districts therein provided for are not organized for political or governmental purposes and do not possess political or governmental powers other than those necessary to carry out the specific purposes for which they are created . . . They are in the same class in that respect as the levees, drains, ditches and irrigation systems, by which Article XVI, Section 3 of the Constitution, the Legislature is authorized to provide, and while specific authority to provide sewer districts is not granted by said section, authority to do so is granted by the broad terms of Article 5, Section 36 of the Constitution." (Emphasis added) In Board of County Commissioners v. Warram,285 P.2d 1034, the Oklahoma Supreme Court upheld the validity of a trust established for the sole purpose of providing water and fire protection to unincorporated areas of Oklahoma County. At page 1041 the Court stated: "It was held in Armstrong v. Sewer Improvement District No. 1, Tulsa County, 201 Okl. 531, 199 P.2d 1012, 207 P.2d 917
and in Lowery v. Water Improvement District No. 5, Tulsa County, 122 Okl. 116, 251 P.2d 748, that the State might select agencies other than governmental subdivisions mentioned in Article X, Section 26 of the Constitution to perform state governmental functions." (Emphasis added) In Sheldon v. Grand River Dam Authority, 182 Okl. 24, 28,76 P.2d 355, 361, the Court upheld the constitutionality of an act of the Legislature creating the Grand River Dam Authority and stated: "We therefore conclude that under the rule of ejusdem generis the act does not create a 'political corporation, or subdivision of the State' within the meaning of Section 26 of Article 10. Rather, it creates a governmental agency or public corporation, with, limited powers, for the purpose of conducting a state function, which could have been accomplished by an existing state board or office . . ." (Emphasis added) It is clear in light of the above cases that special purpose districts such as water, sewer and fire protection districts are agencies authorized by the Legislature to carry out specifically enumerated State governmental functions. Such entities should be considered to be governmental agencies created for limited purposes and as such are allowed to enter into agreements with other governmental units in accordance with the Inter-Local Cooperation Act. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Title 19 O.S. 901.1-901.26 [19-901.1-901.26] creating the authority for the establishment of fire protection districts is constitutional and such districts may vote a bond issue and pay for the bonds by annual special assessments against the land specially benefitted. Fire protection districts are necessarily confined to the boundaries of the county in which they are established. However, organized districts may enter into agreements pursuant to the Inter-Local Cooperation Act (74 O.S. 1001-1008 [74-1001-1008] (1971)). (Robert H. Mitchell) ** SEE: OPINION NO. 76-185 (1976) **